RICHARD D. GARON, PLAINTIFF-APPELLANT, v. JAMES G. BECKER, H. J. WAGNER, THEODORE J. BOZARTH, DALLAS R. JOBES AND W. H. BRYANT, DEFENDANTS-APPELLEES.

Submitted January 29, 1937—Decided April 17, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and PERSKIE.

For the appellant, *Herbert S. Killie* (*Howard G. Stack-house,* of counsel).

For the appellees, *Powell & Parker.*

The opinion of the court was delivered by

PERSKIE, J. In what capacity did the defendants sign the note? Did they sign as makers or endorsers?

Appellant, plaintiff below, instituted suit against the appellees, defendants below, James G. Becker, H. J. Wagner, Theodore J. Bozarth, Dallas R. Jobes and W. H. Bryant, upon a promissory note in the sum of $1,000 signed by all of the named defendants on the back of the note; no signature appears on the usual lower right-hand corner thereof, or on any other part of the face of the note. The note reads as follows:

"$1000.00          Mount Holly, N. J.   Feby. 24th, 1931
    Three months after date we promise to pay to the
    order of            Richard D. Garon            at
    THE UNION NATIONAL BANK AND TRUST COMPANY
                    AT MOUNT HOLLY
    One Thousand & 00/100                    Dollars
    without defalcation for value received
                    [Reverse side of note]
                    JAMES G. BECKER
                    H. J. WAGNER
                    THEO. J. BOZARTII
                    DALLAS R. JOBES
                    W. H. BRYANT."

The record discloses that two defendants only (James G. Becker and Dallas R. Jobes) filed answers and proceeded to trial. At the end of plaintiff's proofs, a motion to nonsuit was made.   The court concluded that there was no proof of defendants having signed the instrument in any capacity other than as endorsers, and, as endorsers, they were entitled to notice of non-payment and of protest, which they concededly did not receive, and therefore, granted the motion. The propriety of that disposition is here challenged.

We have carefully examined the proofs and are constrained to hold that the court below fell into reversible error. We find ample proof from which a jury could well have found that the defendants signed the note not as endorsers but rather as makers thereof.   The plaintiff testified "they [defendants] invited me to their house in the afternoon, at Bozarth's house on Branch street, and when I got there they wanted to raise money to pay Mr. Massey, the contractor, the balance they owed him; so they talked it over and they couldn't get any one to loan them the money, so they asked me."   He further testified that as a result of that conference, the defendants in his presence, signed the note, delivered it to him, and "after they gave me the papers I went and got them $1,000 cash money and gave it to them."   On cross-examination, the plaintiff again said, "that is what they borrowed the money for, to pay Mr. Massey."

The purpose for which the money was obtained from the plaintiff is, of course, immaterial. The fact is that the plaintiff loaned $1,000 to the five defendants and they in turn acknowledged their indebtedness to him by signing a note. Thus this note, as signed, was delivered to the plaintiff and has remained in his possession ever since. True, defendants did not sign at the place where makers of notes usually sign, but, their delivery of the note to the plaintiff, the advance by the latter to them of the face amount of the note, created a fair and legitimate deducible inference that it was the intention of the parties that the five defendants should be liable for the payment thereof as primary obligors. There is nothing in the proof to indicate that any other person was to sign the note as maker.

In this connection it will be observed that the promissory note itself does not import a single primary obligation. The words used on a note, as here, "we promise to pay" has been construed to create a joint as well as a several undertaking. See cases collated in 5 *U. L. A.* (*Negotiable Instruments*) 31, § 101.

We are not unmindful of the rule of construction which provides (section 17 (VI), of the N. I. L., 3 *Comp. Stat.* 1709-1910, *p.* 3737) that "where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign, he is to be deemed an endorser," and section 63 of the same act which provides that "a person placing his signature upon an instrument otherwise than as maker, drawer, or acceptor is deemed to be an endorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." Our Court of Errors and Appeals in *Field* v. *Lukowiak,* 114 *N. J. L.* 268; 176 *Atl. Rep.* 319 (1934), had before it a promissory note which was irregularly signed by four persons in the upper left-hand corner with no signature appearing at the lower right-hand corner. The court, opinion by Mr. Justice Lloyd, held:

"No contention seems to have been made that the paper did not import an obligation, nor could there be. The posi-

tion of the signature on the paper is immaterial if it clearly appears to have been intended as such. * * * While the signatures in the present instance are at the top rather than at the lower right-hand corner of the paper, as is usually the case, it clearly imports an intention to be bound thereby, and it is equally clear that it must have been as makers; otherwise there are no makers and consequently no endorsers. They were the persons primarily liable and absolutely required to pay the note. (See section 192 of the same act.) They were neither endorsers nor drawers, and, therefore, not entitled to demand for payment or notice of non-payment. (Section 89, *Ibid.*)"

There is, moreover, no law requiring a note to be signed at the end, and whenever it can be found that the signature was intended as an execution of the note, it is sufficient. *In re Donohue's Estate,* 115 *Atl. Rep.* (*Pa.,* 1922) 878, citing *Smith* v. *Howell,* 11 *N. J. Eq.* 349. *Cf. Watkins* v. *Kirkpatrick,* 26 *N. J. L.* 84, 86, 91; *Crozer & Moore* v. *Chambers,* 20 *Id.* 256.

In 8 *C. J.* 108, § 198, we find the rule stated as follows: "Ordinarily, the signatures of parties to negotiable instruments have a well understood position on the paper, but, so far as the nature of the liability is concerned, it is generally immaterial where a person signs, since the intent of the signer ordinarily governs the nature of his liability. However, while the position of the signature is not fixed by any law, all departure from the usual place of signature is liable to misconstruction and should be avoided. Thus the signature of the maker or drawer is usually at the lower right-hand corner of the paper. It may, however, be placed on any part of the paper if so placed as a signature and the signature may appear in the body of the bill or note. So the signature of another instrument on the same piece of paper at the foot thereof may be sufficient. It may be written across the face of the instrument, *and one may even sign as a maker on the back of the note.* So the signature of an endorser may in like manner be made upon the face of the note." (Italics ours.)

See, also, annotation (Place of maker's signature on bill or note) 20 *A. L. R.* 394, 396.

The only effect that the signature of a person in an unusual place is that proof is necessary to disclose the capacity in which the instrument was signed. Cf. 20 *A. L. R.* 397 (IV). As we have seen, there was ample proof here from which the jury could have concluded, if it so chose, that the defendants signed in a capacity other than that of endorsers; and that they signed in the capacity of principal obligors, *i. e.,* makers. A *prima facie* case was presented. Defendants offered no proofs. It was, therefore, error to nonsuit.

Judgment is reversed, costs to abide the event.